## GEORGE HARLAN v. THE PEOPLE.

An indictment, under the statute, (R. S. 638, § 18,) for knowingly having in possession instruments adapted and designed for making counterfeit coin, to wit, Mexican dollars, with intent to use the same, need not alledge that the defendant was not employed in the mint of the United States.

The power vested in Congress by the Federal Constitution, (Art. I. sec. 7,) " to provide for the punishment of counterfeiting the current coin of the United States," may be exercised by the several states concurrently with Congress.

The jurisdiction of the federal courts, over offences against the laws of Congress providing for the punishment of counterfeiting the current coin of the United States, is not exclusive of the jurisdiction of the state courts, over offences against state laws, making it punishable to counterfeit such coin.

An indictment for violating the laws of this state against counterfeiting, (R. S. 638, §§ 16, 18,) properly charges the offence to have been committed against the sovereignty of the people of this state, instead of charging it to have been committed against the sovereignty of the people of the United States.

ERROR to Berrien Circuit Court.

This was an indictment against Harlan, for violating the provisions of sections 16 and 18 of ch. 5, tit. 1. pt. 4th, of the revised statutes of this state. The first count, which was framed under § 18 of the statute, charged the defendant with knowingly having in his possession a press and other instruments, adapted and designed for making coun-

terfeit coin, to wit, Mexican dollars, with intent to use the same.    The second count, framed under § 16, charged him with uttering and passing certain counterfeit coin, to wit, Mexican dollars, knowing it to be counterfeit.    At the trial, before E. Ransom, Presiding Judge, the jury found a verdict of guilty.    Several errors are assigned, all of which are founded upon the indictment, and appear in the opinion of the Court.

*Green & Dana,* for the plaintiff in error.

*N. Bacon,* for the People.

Felch, J. delivered the opinion of the Court.

1. It is assigned for error, that the first count in the indictment does not aver that the plaintiff in error was not employed in the mint of the United States.    It is assumed that persons so employed, may rightfully have in their possession, and use, the instruments mentioned in this count of the indictment; that it is their employment to use them in coining; and it is contended that, inasmuch as the indictment does not alledge that the defendant was not so employed, it does not appear that he has been guilty of a violation of the statute.    The assumption upon which this objection rests is erroneous.    Persons employed in the mint of the United States, have no right to possess and use the instruments described in this count of the indictment.    The coining of money has been uniformly considered the prerogative of government, and has been exercised by all civilized nations.    The establishment of a mint, the denomination of the coin to be issued, the weight of the coin, the proportion of pure gold and silver, and the quantum of alloy, the impression and superscription, are all fixed by law.    These each government fixes for itself independent of others.    The American coin is issued according to our own laws, and by men employed for that

purpose in the mint of the United States. The act of Congress establishing the mint, passed April 2d, 1792, provides for the coin of this nation, and authorizes the coinage of gold and silver under the authority of government. They who are employed in the mint under this act, are employed exclusively in making the coin of the government, as established by the act of Congress. The coining of gold and silver, is, in fact, but giving the form adapted to use as a circulating medium, together with the stamp of the state, guaranteeing the weight, fineness and value of the piece.

The instruments which the plaintiff in error is charged in the indictment with having in his possession, are tools for making Mexican dollars. This is a foreign coin. It is stamped by the government of the place where it is coined, and its impress only shows that its value is certified by that government to be in accordance with the laws of that country. Foreign coin is made current here by the acts of Congress, and those acts have fixed the rate at which it shall be received. But no act of Congress has ever authorized the making of foreign coin at the mint of the United States, nor are the officers of the mint lawfully in possession, with the right to use, of the instruments for making such coin. Even to show that the person charged with such an offence, was an officer of the mint, would not, therefore, excuse the crime; neither can the omission to alledge that the defendant was not so employed, vitiate an indictment.

2. It is insisted also, as a second ground of error, that, the whole subject of coinage being committed by the constitution of the United States to the general government, jurisdiction of all offences pertaining to it, or connected with it, is in the courts of the Federal Union, to the exclusion of the state courts; and that, therefore, this Court has no jurisdiction in this case.

In order to determine whether this ground of error is well taken, it will be necessary to inquire into the nature of our Federal Union, and to ascertain what power or sovereignty has been yielded by the states to the government of the Union, by the constitution. In the capacity of a sovereign state, no one would deny to Michigan the right to adopt her own system of internal police,—to prohibit the acts charged in the indictment, and to make them criminal,—to fix the punishment and to provide for the trial of the offence by the courts of the state. Is this power yielded to the government of the Union? Is the jurisdiction of the federal courts over the whole subject of offences for counterfeiting the current coin of the United States, exclusive of the jurisdiction of the state courts; or do both the federal and state courts possess concurrent jurisdiction in the premises?

By the constitution of the United States, certain powers are yielded by the individual states to the general government. In the 82d number of the Federalist, it is stated that the state governments would clearly retain all their original rights of sovereignty, which were not, by that constitution, exclusively delegated to the Union. The alienation of state power or sovereignty, would exist only in three cases:—first, when the constitution in express terms granted an exclusive authority to the Union;—secondly, when it granted in one instance an authority to the Union, and in another prohibited the states from exercising the like authority;—and, thirdly, when it granted an authority to the Union, to which a similar authority in the states would be absolutely and totally contradictory and repugnant. This early exposition of the constitution has been repeatedly and uniformly approved, by subsequent writers on the subject of constitutional law. 1 Kent's Com. 387; *Colden* v. *Bull*, 3 Dall. R. 386; *Sturgess* v. *Crowningshield*, 4 Wheat. R. 193; *Houston* v. *Moore*, 5

Wheat. R. 1 ; 3 Story on Const. 619 ; Serg. Const. Law, 275. And it is affirmed, by the same authorities, that a mere grant of power in affirmative terms, does not, *per se*, transfer an exclusive sovereignty on such subjects to the Union. In all cases not falling within either of the classes already mentioned, the states retain either the sole power, or a power which they may exercise concurrently with Congress. This results not only from the general principles on which the Union is founded, but is within the letter of the tenth article of the amendments to the constitution, which declares that " the powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively or to the people."

By the seventh section of the first article of the constitution, power is given to Congress to coin money, regulate the value thereof, and of foreign coin ; and also to provide for the punishment of counterfeiting the securities and current coin of the United States. By the tenth section of the same article, it is provided, that no state shall coin money, emit bills of credit, or make any thing but gold and silver coin a tender in payment of debts.

An examination of these and the other provisions of the constitution, shows that the power to coin money is ceded by the states to Congress, and now resides exclusively in that body ; and also that the clause giving power to Congress to provide for punishing counterfeiting, contains no words either prohibiting a like power to the states or giving exclusive power to Congress. That power cannot, therefore, be considered as yielded by the states, within either of the two first branches of the rule laid down in the authorities before cited. Nor is such authority in the states, in my opinion, so totally contradictory and repugnant to the power delegated to the federal government, as to bring the case within the third branch of that rule. The

history of criminal jurisprudence shows that the ingenuity of criminals often requires a modification of criminal law, and increased severity of punishment;—that, in the wide extent of this Union, the commission of crime may be more injurious to the interests of the community in one state than another; and that combinations for the commission of particular classes of offences, may exist in one part of the Union, which are hot found in another; and it might judiciously be reserved to the several states to apply such speedy and timely legislation as the exigency of the case might require, within her own borders, without waiting for the more tardy or less specific act of Congress on the subject.

It is true, as has been argued at the bar, that this rule may lead in some instances to disparity of punishment for the same act; but, it is equally true, that there may be reasons for such disparity of punishing in the different states; and as each legislature fixes its own penalty to a violation of the statute, such uniformity is not to be expected. It can at all events be no argument against a concurrent jurisdiction.

It is also objected to the jurisdiction of the state court, that the executive of the state could not pardon the convict, for the reason that the offence is against the United States. We answer, the offence charged is for a violation of the laws of our own state, and not of the United States, and the power of the executive is as perfect in this case as in any other.

The objection is also urged, that a conviction in the state court would be no bar to an indictment in the courts of the United States. But if such concurrent jurisdiction in fact exists, we apprehend such conviction would be admitted in federal courts as a bar. This would follow necessarily from the existence of a concurrent jurisdiction, even if it did not come strictly within the provision of the

seventh article of the amendments of the constitution. Serg. Const. Law, 298; *Houston* v. *Moore,* 5 Wheat. 31.

It is claimed that the second section of the third article of the constitution gives exclusive jurisdiction to the courts of the Union, in all cases therein mentioned. This section provides, that the judicial power shall extend to all cases in law and equity, arising under the constitution, the laws of the United States, and treaties made and which shall be made under their authority. How far this article confers exclusive power on the courts of the Union, does not seem to be fully settled by authorities. But it is admitted that the judicial power was unavoidably, in some cases, exclusive of all state authority, while in other cases a concurrent jurisdiction remained in the state tribunals. 1 Kent's Com. 318. It is admitted that a difficulty may arise in cases growing out of the constitution alone, where no jurisdiction existed in the states anterior to the adoption of that instrument. But in cases where the states had such power originally, they still retain it, unless yielded to Congress in one of the methods before mentioned. 3 Story on Const. 618; 1 Kent's Com. 318; Serg. Const. Law, 276. It is contended by the plaintiff in error, that no such jurisdiction in the matter now under consideration, existed in the states prior to adopting the constitution.

It is a matter of history, that some of the states at an early period, while yet colonies, established mints for the coining of money. Massachusetts, in 1652, established a mint for coining shillings, sixpences and three-penny pieces. The proprietary of Maryland, in 1662, established a mint, and in 1676, the law was confirmed by the colony, and the coin became the common currency. The money of account of the whole country, was nominally that of England,—the circulating medium was chiefly Spanish and Portuguese. Most of the colonies, at different times, legislated upon the subject of the currency, fixing its nom-

inal value, and attaching penalties to a violation of the laws in reference to it.   One effect of this diversity of legislation in the different colonies exists to this day, in the different value given in the several states in the Union to the shilling.   In the reign of Queen Anne, an attempt was made by royal proclamation and an act of parliament, to put an end to this confusion, by fixing the value of the coin in the colonies ; but the effort proved abortive.

Under the confederation, which immediately preceded the organization of government under the present constitution, there was delegated to the Continental Congress the sole and exclusive right and power of regulating the alloy and value of coin struck by their own authority or by that of the respective states.   Art. 9.   This provision recognizes the existence of the power of the states over the entire subject of coinage, but yielded to Congress the power to regulate the alloy and value thereof.   It is observable that under these articles, no power is given to the Continental Congress over foreign coin.   The states delegated to them no power either to fix its value, or to punish for any violation of the public interests in reference to it.   Under the second article of the confederation, the jurisdiction in this matter not having been delegated to Congress, is, by express declaration, retained by the separate states.   During the existence of the confederation, from the time of its adoption on the first of March, 1781, until the fourth of March, 1789, when the present constitution went into effect, much difficulty was in fact experienced from the legislation of the different states on this very subject.   The feebleness of the Continental Congress in respect to this subject, the evils of a concurrent power in the states in reference to the coin, together with a total want of power in Congress to regulate foreign coin, are described by the history of the times, as reasons, among others, for relinquishing the confederation, and adopting the present more

perfect and permanent constitution. The whole subject of foreign coin, the regulation of its value, the making it a lawful tender, and the punishment for any violations of law in reference to it, remained in the states exclusively, until the adoption of the present constitution. And it is believed that most of the original states had passed laws in reference to this subject, which were in full force at the time of adopting the constitution. As late as 1816, an indictment was tried, and the prisoner convicted under such a law, in the Constitutional Court of South Carolina.

This reference to the articles of confederation and the history of the period when they were in force, shows clearly, I think, that the jurisdiction over the subject of foreign coin and the regulation of it, was in the states at the time of the adoption of the constitution; and so far as the offence of counterfeiting such coin, or having in possession tools with intent to counterfeit it, is concerned, the states retained a concurrent jurisdiction after the constitution was adopted. Michigan, having been admitted into the Union on an equal footing with the original states, has, of course, the same power, and the same right to enforce her laws by her own tribunals.

The most that could be claimed is, that Congress had the power to make the jurisdiction of the federal courts exclusive on this subject. The judiciary act of September 24, 1789, evidently contemplates, in all cases arising under the judicial power granted by the constitution, an exclusive jurisdiction in the courts of the United States. This, however, was a disability imposed by Congress, only in cases where a jurisdiction before existed in the states; and it was in the power of Congress, by legislation, to remove the disability and restore concurrent jurisdiction. The act of Congress providing for punishment for counterfeiting the current coin, passed April 21, 1806, contains a proviso that nothing therein contained should be con-

strued to deprive the courts of the individual states of jurisdiction, under the laws of the several states, over offences made punishable by this act. This is not giving jurisdiction to a state court by act of Congress, to enforce a law of Congress. It is merely removing a disability imposed, or which might be supposed to have been imposed, by a previous act of Congress, and restoring to the states the original jurisdiction over offences against state laws, providing for the punishment of counterfeiting the current coin.

This question of concurrent jurisdiction in the state courts, has been directly decided in the courts of several of the states of this Union. In Barb. Magistrate's Crim. Law, 99, such concurrent jurisdiction is laid down as established by authorities. In the *State* v. *Antonio*, in the Constitutional Court of South Carolina, 3 Wheel. Cr. Cases, 508, the same questions were discussed, and the jurisdiction of the state court sustained. So in the *State* v. *Tuff*, 2 Bail. S. C. Rep. 44, cited 1 Kent's Com. 397. So also, in *Chess* v. *The State*, 1 Blackf. R. 198.

3. The last error assigned is, that the indictment charges the offence to have been committed against the sovereignty of the people of this state, whereas in fact it should be against the sovereignty of the United States. The indictment is for a violation of a law of this state, and the constitution of the state provides for the conclusion of the indictment in the form here used. If it were an indictment for the violation of the law of Congress, it should then charge the offence to be against the sovereignty of the United States ; but in that event, the prosecution could not properly be sustained in a state court.

From a view of the whole case, we are satisfied that there is no error in the record, and the judgment of the Court below must be affirmed.

*Judgment affirmed.*