*909 P.2d 1084*

**STATE of Arizona, Appellee,**

v.

**Terry Lamont McMURRY, Appellant.**

**No. 1 CA–CR 94–0674.**

Court of Appeals of Arizona,
Division 1,
Department B.

Dec. 14, 1995.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Galen H. Wilkes, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Garrett W. Simpson, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

EHRLICH, Judge.

Terry McMurry ("defendant") appeals his conviction and disposition for one count of forgery. Because we conclude that the Maricopa County Superior Court had jurisdiction and that the jury was adequately instructed on the principle of reasonable doubt, we affirm the judgment.

### FACTS [1] AND PROCEDURAL HISTORY

On the evening of October 27, 1993, Arizona Department of Public Safety ("DPS") Officer Joe Mulcaire and Lieutenant Charles Warner observed a group of men, including the defendant and Andre Barnett, at a basketball concession at the Arizona State Fair. Officer Mulcaire watched the defendant and Andre Barnett play basketball but only saw Barnett hand the concessionaire money prior to playing; the game cost one or two dollars. After the men left the stand, the concessionaire approached the DPS officers and handed Officer Mulcaire three $20 bills which he thought were counterfeit and pointed out those responsible.

1. We view the facts in a light most favorable to sustaining the verdict, resolving all reasonable inferences therefrom against the defendant.

Lieutenant Warner was joined by two other DPS officers and they followed the same men to another concession. Barnett approached the second concessionaire and gave him a $20 bill to play the game. After Barnett completed the game, which also cost a dollar or two to play, Lieutenant Warner recovered from the concessionaire the $20 bill, later determined to be counterfeit, and arrested Barnett. No other money was found during a search of Barnett. However, as the officers approached Barnett, one of them noticed that the defendant had some money in his right hand, later determined to be five counterfeit $20 bills. The defendant then was arrested.

The defendant was indicted for one count of forgery for knowingly possessing a forged instrument, the five counterfeit $20 bills, with an intent to defraud, a class 4 felony. Ariz. Rev.Stat.Ann. ("A.R.S.") § 13–2002. Following a jury trial, he was convicted as charged. Prior to sentencing, the defendant moved to dismiss the case for lack of jurisdiction, claiming that the state prosecution was preempted by federal law because Congress showed an unequivocal intent to preempt state enforcement of counterfeiting offenses. He further asserted that, because the evidence at trial exclusively pertained to his possession of counterfeit currency, no private harm was realized. The trial court denied the motion and placed the defendant on probation until either he fully paid the $4480 financial assessment ($12 time-payment fee, $100 felony assessment and $4368 probation-service fee) or for three years. The defendant timely appealed.

### DISCUSSION

#### 1. Preemption

The defendant first argues that the trial court erroneously denied his post-verdict motion to dismiss because the state court lacked jurisdiction to try him for possession of counterfeit United States currency. As an initial matter, despite the defendant's contention that he was convicted of possessing counter-

E.g., State v. Atwood, 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), cert. denied, 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

feit tender, we clarify that he was convicted of knowingly possessing counterfeit currency with the intent to defraud and it is this statute which we analyze in terms of potential preemption by the federal counterfeiting statutes.

Although an act may be both a federal and a state crime, *California v. Zook,* 336 U.S. 725, 731, 69 S.Ct. 841, 844, 93 L.Ed. 1005 (1949), federal law may preclude a state from legislating in a particular area in a number of ways: (1) if the federal statute expresses a clear intent to preempt state law, (2) if there is an outright or actual conflict between the federal and state law, (3) if compliance with both laws is physically impossible, (4) if the federal law implicitly bars state regulation, (5) if Congress has legislatively occupied the entire field of regulation, leaving no room for the state to supplement, or (6) if the state law is an obstacle to the accomplishment and execution of the full objectives of Congress. *State v. Dunn,* 166 Ariz. 506, 509, 803 P.2d 917, 920 (App.1990) (citing *Louisiana Public Serv. Comm'n v. F.C.C.,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986)), *cert. denied,* 502 U.S. 827, 112 S.Ct. 94, 116 L.Ed.2d 66 (1991). *See also Nastasi v. Aderhold,* 201 Ga. 237, 39 S.E.2d 403, 404 (1946) (citing, *inter alia,* FEDERALIST PAPER 82; 1 KENT'S COM. 387; 3 STORY ON CONST. 619; Amend. X, U.S. Const.). "Congress' intent to 'supersede or exclude state action . . . is not lightly inferred. The intention to do so must definitely and clearly appear.'" *People (Guam) v. Villacrusis,* 992 F.2d 886, 887 (9th Cir. 1993) (quoting *Kelly v. Washington ex rel. Foss Co.,* 302 U.S. 1, 12, 58 S.Ct. 87, 93, 82 L.Ed. 3 (1937)). The defendant claims specifically that his state prosecution for forgery is preempted by 18 U.S.C. § 472 because the federal government has expressly or impliedly occupied the entire field in this area. We now examine the particular statutes.

The Arizona criminal statute at issue provides that a person commits forgery if, with intent to defraud, such person knowingly possesses a forged instrument which is defined as any paper, document or other instrument containing written or printed matter, or its equivalent, which has been falsely made, completed or altered. A.R.S. §§ 13–2002(A)(2), 13–2001(3), (9)(a). The corresponding federal statute, 18 U.S.C. § 472, states that:

> Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

Nothing in the federal statutes regarding counterfeiting, including the one quoted above, indicates, much less expresses, an intent by the federal government to legislatively occupy the field as to the punishment of those who possess counterfeit tender, with an intent to defraud. In fact, 18 U.S.C. § 3231 declares a contrary intent by stating that "[n]othing in this title [18] shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof."

The conclusion that the State of Arizona has jurisdiction over the forgery charge is supported by decisions from other jurisdictions. In *United States v. Crawford,* the United States Court of Appeals for the Ninth Circuit recognized that, "[w]hile the federal government has primary jurisdiction for prosecuting charges relating to counterfeiting, it is also a state crime. The federal statutes do not wholly occupy the field and the states have concurrent jurisdiction to prosecute." 657 F.2d 1041, 1046 n. 6 (9th Cir.1981). State courts similarly have decided. For example, twenty years prior to *Crawford,* the Connecticut Supreme Court decided that the state's law, which made it a crime to utter counterfeit money with the intent of defrauding another, was not superseded by federal legislation. *State v. Scarano,* 149 Conn. 34, 175 A.2d 360 (1961). The court resolved that "the United States Code, in the sections relating to counterfeiting (18 U.S.C. §§ 471–473) shows a clear intent not to deprive the state of jurisdiction. It provides that 'nothing in this title shall be held to take away or impair the jurisdiction of the

courts of the several states under the laws thereof.'" *Id.* at 363 (quoting 18 U.S.C. § 3231). *See also Nastasi*, 39 S.E.2d at 405 (relying on 18 U.S.C. § 3231, formerly 18 U.S.C. § 547, to decide that passing counterfeit coin expressly excepted from law giving exclusive jurisdiction to United States). In affirming the state conviction for passing counterfeit money in *Scarano*, that court further recognized:

> There is nothing repugnant or contradictory to constitutional principles or to our federal system of government in the concurrent exercise of the power to impose sanctions on the counterfeiting of federal currency or the passing of counterfeit federal currency.... Both the federal and state governments have the power to deal with the matter, the federal government for the purpose of protecting the purity of its currency, the states for the purpose of protecting their citizens against fraud.

175 A.2d at 363 (citing *Bartkus v. Illinois*, 359 U.S. 121, 129, 79 S.Ct. 676, 681, 3 L.Ed.2d 684 (1959)). *See also Cross v. State*, 122 Ga.App. 208, 176 S.E.2d 517, 518, 519 (1970) (state court had jurisdiction over Cross's forgery charge for passing counterfeit currency because crime involved "a private wrong and not an offense committed directly against the Federal Government as in counterfeiting"); *People v. Kalmus*, 123 N.Y.S.2d 411 (N.Y.Ct.Gen.Sess.1953) (rejecting contention that, because only federal government can issue currency, there can be no valid state law similarly pertaining to counterfeiting; states and federal government have concurrent jurisdiction over emission of counterfeit moneys).

■ The defendant maintains that no compelling state interest was harmed by his "mere possession" of counterfeit currency. He omits from this argument, however, that he was convicted of forgery, which required the state to prove, in addition to his knowing possession of counterfeit currency, that he had an intent to defraud. The record clearly establishes that the defendant intended to defraud concessionaires at the Arizona State Fair. He agreed to pay for Barnett and

Barnett's brother to enter the fair and play games, knowing that Barnett had no money with him. United States Secret Service Agent Phil Elston testified that Barnett had related to him that, upon entering the fair, the defendant gave Barnett two $20 bills. After Barnett played the first concession, the defendant told Barnett that the bills he had been given were counterfeit.[2] Barnett then passed a counterfeit $20 bill at the next concession. Upon his arrest, the defendant possessed five counterfeit $20 bills. He later testified that he intended to spend at the fair all of the money he had with him, including the five bills. Thus, the defendant's attempt to argue preemption because of a lack of state interest in United States currency is not persuasive.

The motion to dismiss the defendant's forgery conviction properly was denied.

### 2. Reasonable-doubt Instruction

■ At the close of evidence, the jury was instructed regarding the presumption of the defendant's innocence and reasonable doubt. In relevant part, the trial court explained:

> The law does not require a defendant to prove innocence. Every defendant is presumed by law to be innocent. The State must prove the defendant guilty beyond a reasonable doubt. This means that the State must prove each element of the charges beyond a reasonable doubt.
>
> Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the State's proof must be more powerful than that. It must be beyond a reasonable doubt.
>
> The State has the burden of proving every fact necessary to constitute the offense with which the defendant is charged so that you are convinced that the defendant is guilty of this offense beyond a reasonable doubt. The State is not required to prove guilt beyond all possible doubt or to a mathematical certainty.

**2.** Agent Elston added that the nine counterfeit bills were from the same printer or the same

family. They were all produced on an office copy machine that used water-soluble ink.

"Reasonable doubt," as the name implies, is a doubt based upon reason. A doubt for which you can give a reason. It is not a fanciful doubt, nor a whimsical doubt, nor a doubt based upon conjecture. It is such a doubt as would cause a juror, after careful and impartial consideration of all of the evidence, to be so undecided that the juror cannot say that he or she has an abiding conviction of the defendant's guilt.

▆ Previously, at the hearing during which the jury instructions were settled, counsel for the defendant had objected unsuccessfully that the use of the word "possible" in the second sentence of the above third paragraph lessened the state's burden of proof. His brief does not preserve that argument but he does raise three new complaints regarding the above-quoted charge: (1) the term "abiding conviction" is vague and ambiguous, and invites the jurors' subjective judgment, (2) the instruction commands the jurors to consider all the evidence although a juror need not assign any weight to some of the evidence and (3) it fails to state that a lack of evidence can be the basis for reasonable doubt. An accused's failure to object at trial to an error or omission in the jury instructions waives the issue absent fundamental error. Ariz.R.Crim.P. 21.3(c); *State v. Gallegos*, 178 Ariz. 1, 870 P.2d 1097, *cert. denied*, —— U.S. ——, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994). We find no fundamental error in the above charge.

▆ The Arizona Supreme Court since approved a jury instruction on the meaning of reasonable doubt. *See State v. Portillo*, 182 Ariz. 592, 596, 898 P.2d 970, 974 (1995). Included within the instruction is the following:

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him/her guilty. If, on the other hand, you think there is a real possibility that he/she is not

guilty, you must give him/her the benefit of the doubt and find him/her not guilty.

While the definition provided in the present case is not identical to that approved by the supreme court, we can discern no meaningful difference between the phrase "abiding conviction" as used in the defendant's trial and "firmly convinced" as recommended by the supreme court. Further, the sanctioned instruction makes no mention that a lack of evidence can be the basis for a juror's reasonable doubt, and the jurors were instructed that it was their duty to determine the facts and the weight to be given to all of the evidence. We find no fundamental error with the instruction.

We have further reviewed the record for other fundamental error and found none. The forgery conviction and disposition are affirmed.

THOMPSON, P.J., and KLEINSCHMIDT, J., concur.