69 P.3d 1006

**STATE of Arizona, Appellee,**

v.

**Michael Paul SULLIVAN, Appellant.**

**No. 1 CA–CR 02–0115.**

Court of Appeals of Arizona, Division 1, Department A.

May 29, 2003.

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Consuelo M. Ohanesian, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Paul J. Prato, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

BARKER, Judge.

¶ 1 We determine in this case that the failure to give a reasonable doubt instruction in the manner prescribed in *State v. Portillo*, 182 Ariz. 592, 898 P.2d 970 (1995), is error but that it is not structural error and remains subject to a harmless error analysis.

### Background

¶ 2 Appellant Michael Sullivan was charged with and convicted on one count of forgery, a class 4 felony. On August 2, 2001, appellant presented a check in the amount of $895 to a teller at the Bank of America located at 35th Avenue and Peoria. The check identified appellant as the payee and he presented two forms of identification verifying that he was Michael Sullivan. The teller became suspicious that the check was not genuine because there were different color inks on it, there was a notation on the memo line, and it was drawn on a credit card account rather than a bank account. The teller verified that the payors of the check had not written a check to appellant. Phoenix Police Officer Kenneth Perry was summoned to the bank and detained appellant on suspicion of forgery.

¶ 3 Appellant was arrested and driven to the police station, where he was read his Miranda rights and agreed to speak with Officer Dwayne Susuras. Officer Susuras testified that appellant explained to him that he was visiting a friend when an acquaintance, Eon, came to the door and asked appellant if he would cash a check. Appellant agreed, and Eon wrote appellant's name on the check as payee. Appellant told the officer he did not know who signed the front of the check, where Eon got the check, or why Eon would not cash the check himself. Appellant also stated that he was to be paid $250 by Eon in exchange for cashing the $895 check.

¶ 4 Appellant originally told Officer Susuras that he had only known Eon for three days, but later admitted that he had cashed a check for Eon a month prior in exchange for $50. The officer further inquired whether appellant thought the check might be bad because of the "different types of writing and ink on the front of the check," to which appellant responded, "I was in a hurry. I didn't even think about it being bad. If I would have sat and thought about it for a while, I might have. But, I was going to play basketball, and I was in a hurry." In appellant's conversation with Officer Susuras,

he offered no explanation as to why he was being paid $250 for cashing the check.

¶5 At the close of the evidence, defense counsel moved for an acquittal pursuant to Arizona Rule of Criminal Procedure Rule 20 ("Rule 20"). The motion was denied. Defense counsel subsequently objected to the trial court's proposed jury instruction on reasonable doubt, claiming that it did not mirror the instruction required by *State v. Portillo*. This objection was overruled. Appellant was found guilty and placed on three years probation. He timely appealed, assigning the denial of his Rule 20 motion and the trial court's ruling on the *Portillo* instruction as error.

### Discussion

#### 1. Rule 20 Motion for Acquittal.

¶6 Rule 20 allows for a judgment of acquittal before the verdict "if there is no substantial evidence to warrant a conviction." On review, the appellate court must consider the evidence in a light most favorable to sustaining the trial court's decision. *State v. Neal*, 143 Ariz. 93, 98, 692 P.2d 272, 277 (1984). If reasonable minds could differ on the inferences to be drawn from the evidence, the motion for judgment of acquittal must be denied. *State v. Landrigan*, 176 Ariz. 1, 4, 859 P.2d 111, 114 (1993).

¶7 Appellant was charged with forgery under Arizona Revised Statutes ("A.R.S.") section 13–2002 (2001). The particular subsection of § 13–2002 under which appellant was charged requires an intent to defraud coupled with offering or presenting a forged instrument or one that contains false information. Appellant argues that the State failed to present substantial evidence of his alleged intent to defraud, relying on the fact that he did not attempt to conceal his true identity from the bank teller and that he was honest with the police.

¶8 An intent to defraud may be, and often is, deduced from circumstantial evidence. *State v. Maxwell*, 95 Ariz. 396, 398, 391 P.2d 560, 562 (1964); *State v. Thompson*, 194 Ariz. 295, 297, ¶ 13, 981 P.2d 595, 597 (App.1999). In *Maxwell*, our supreme court

acknowledged that there is often no direct evidence of intent to defraud:

> [F]raudulent intent, as a mental element of crime, is often difficult to prove by direct evidence. In many cases it must be inferred from acts of the parties, and inferences may arise from a combination of acts, even though each act or instance, standing by itself, may seem unimportant.

95 Ariz. at 398, 391 P.2d at 562 (quoting *Gates v. United States*, 122 F.2d 571, 575 (10th Cir.1941)).

¶9 In this case, appellant watched Eon write in appellant's name as payee on the check. By allowing himself to be designated as payee, appellant represented to the bank that the victims, as owners of the account on which the check was drawn, intended that funds from their account be transferred to appellant. Appellant knew that this was not the case.

¶10 Additionally, appellant supplied the officers with conflicting information regarding his relationship with Eon. When first interviewed, appellant claimed he had only known Eon for three days. In a second interview, appellant admitted that he had cashed a check for Eon a month before and had received $50 from Eon for doing so. Most importantly, however, appellant was to be paid $250 for cashing a check in the amount of $895. Certainly, this is powerful evidence that appellant formed the intent to defraud.

¶11 Based on these facts, there was substantial evidence upon which a jury could base a conviction for fraud. There was no error in the trial court's denial of appellant's motion for a judgment of acquittal.

#### 2. Portillo Instruction.

¶12 Appellant next contends that the trial court erred as the reasonable doubt instruction it gave did not strictly comply with the instruction mandated by *State v. Portillo*. In *Portillo*, our supreme court directed that trial courts give a specific, uniform instruction on reasonable doubt. 182 Ariz. at 596, 898 P.2d at 974. That instruction is as follows:

> The state has the burden of proving the defendant guilty beyond a reasonable

doubt. In civil cases, it is only necessary to prove that a fact is more likely true than not or that its truth is highly probable. In criminal cases such as this, the state's proof must be more powerful than that. It must be beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him/her guilty. *If, on the other hand, you think there is a real possibility that he/she is not guilty, you must give him/her the benefit of the doubt and find him/her not guilty.*

*Id.* (emphasis added).

¶ 13 It is the concluding sentence of this instruction that is directly at issue here. In this case, the trial court deleted the final sentence and replaced it with the following: "Otherwise, you must find the defendant not guilty." The defendant objected to the revised language.

¶ 14 The *Portillo* court was unusually specific in directing compliance with its mandated reasonable doubt instruction. Just before articulating the instruction, the court stated:

Pursuant to our supervisory authority and revisory jurisdiction under Ariz. Const. art. 6, §§ 3 and 5, therefore, we instruct that in every criminal case trial courts shall give the reasonable doubt instruction that we set forth below.

182 Ariz. at 596, 898 P.2d at 974. After articulating the instruction, the court repeated:

To ensure that the reasonable doubt standard of proof continues to serve its 'vital role in the American scheme of criminal procedure' ... we require as a matter of state law that commencing no later than January 1, 1996 Arizona trial courts give the reasonable doubt instruction set forth

in Part C of this opinion in every future criminal case.

*Id.* (citation omitted).

■ ¶ 15 Nowhere in the opinion is there any hint that a trial court may modify the instruction in any substantive way. And we certainly do not have the authority to sanction any such modification. To the contrary, we are constrained by the decisions of our supreme court and are not permitted "to overrule, modify, or disregard them." *City of Phoenix v. Leroy Liquors,* 177 Ariz. 375, 378, 868 P.2d 958, 961 (App.1993). Allowing modification by the trial court also is directly contrary to one of the fundamental purposes of the instruction itself: to provide a "single, uniform instruction" so as to avoid error. *Portillo,* 182 Ariz. at 596, 898 P.2d at 974.

■ ¶ 16 In this case, there is no question that the trial court erred by removing a portion of the mandated *Portillo* instruction and replacing it with language of its own choosing. The error is clear. The question becomes, what do we do with it? Is it subject to a harmless error analysis or does it constitute structural error?

### a. Structural Error or Harmless Error Analysis?

■ ¶ 17 Following United States Supreme Court decisions, Arizona law holds that "[a] criminal trial undermined by structural error 'cannot reliably serve its function as a vehicle for determination of guilt or innocence[.]'" *State v. Garcia–Contreras,* 191 Ariz. 144, 148, ¶ 15, 953 P.2d 536, 540 (1998) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). In this case, to hold that there is structural error by failing to give *Portillo's* exact language would lead to the conclusion that all trials held before *Portillo* using an instruction other than the precise language in *Portillo,* were trials that did not "reliably serve [their] function as a vehicle for determination of guilt or innocence." *Id.* This issue was addressed in *Portillo.* In announcing a uniform jury instruction on reasonable doubt, the *Portillo* court made it clear that the traditionally given definition of reasonable doubt "satisfies due process and does not provide these or any other defendants in

past cases a basis for claiming error." 182 Ariz. at 596, 898 P.2d at 974. In fact, *Portillo* expressly recognized that "the fact that *some* errors involving reasonable doubt definitions are structural and cannot be deemed harmless" was a reason it mandated a "single, uniform instruction." *Id.* (emphasis added). *Portillo* acknowledges the obvious: By recognizing that "*some* errors involving reasonable doubt definitions are structural," it follows that not *all* such errors are. *See id.* (emphasis added). It follows that an appellate court has to examine the instruction to see if the error in defining reasonable doubt was such that it "cannot be deemed harmless." *Id.* (emphasis added). While not expressly stating that future errors in following Portillo are subject to a harmless error analysis, to preclude such an analysis is inconsistent with *Portillo*.

¶ 18 This court, too, has dealt with the issue of whether failure to give the *Portillo* instruction constitutes structural error as contrasted with error that is subject to a harmless error analysis. In *State v. McMurry*, 184 Ariz. 447, 909 P.2d 1084 (App.1995), this court analyzed whether a reasonable doubt instruction given prior to the *Portillo* case, and which did not comport with *Portillo*, resulted in reversible error. The court specifically noted that the instruction was "not identical to that approved by the supreme court" and then engaged in a fundamental error analysis. *Id.* at 451, 909 P.2d at 1088. Finding none, it affirmed.

■ ¶ 19 The *McMurry* decision applied the principle that *Portillo* expressly set forth: "[S]ome errors involving reasonable doubt definitions are structural and cannot be deemed harmless[.]" *Portillo*, 182 Ariz. at 596, 898 P.2d at 974. The corollary, though not expressly stated, is also true: Some errors involving reasonable doubt definitions are *not* structural and *can* be deemed harmless. The same framework utilized in *McMurry* applies here, even though the case arises after *Portillo* was announced. The trial court's error is subject to a harmless error analysis.

### b. Is the Error Harmless in this Case?

■ ¶ 20 In this case, the trial judge substituted the phrase "Otherwise you must find the defendant not guilty" for the phrase "If, on the other hand, you think there is a real possibility that he/she is not guilty, you must give him/her the benefit of the doubt and find him/her not guilty." Interestingly, the portion of the *Portillo* instruction that the judge did not give is the portion which other defendants have claimed "improperly shifted the burden of proof to the defendant." *State v. Finch*, 202 Ariz. 410, 415, ¶ 18, 46 P.3d 421, 426 (2002).[1] While the trial judge should not have made the modification, the instruction clearly conveyed (in the exact language from *Portillo*) that the State had the burden of proving each element of the defense beyond a reasonable doubt and if it did not, "you must find the defendant not guilty." The jury was clearly and directly advised of the appropriate burden of proof and the consequences if the State failed to meet it.

¶ 21 The preceding section of this opinion sets forth the key facts upon which the State relied for conviction. They are compelling. We have no hesitation in concluding, beyond a reasonable doubt, that given the facts of this case and the nature of the legal error in the instruction on reasonable doubt, the error was harmless. *See State v. Atwood*, 171 Ariz. 576, 639, 832 P.2d 593, 656 (1992) ("The test for determining harmless error is 'whether there was reasonable probability ... that a verdict might have been different had the error not been committed.' ") (quoting *State v. Williams*, 133 Ariz. 220, 225, 650 P.2d 1202, 1207 (1982)).

### c. If Harmless Error Applies, How Can The Mandate for Uniformity Under Portillo Be Maintained?

¶ 22 One response to allowing a harmless error analysis is: How do we fulfill the mandate for uniformity under *Portillo* if we subject it to a harmless error analysis? After all, our supreme court has required that we use "a single, uniform instruction" on reason-

---

1. In *Finch*, the defendant claimed the *Portillo* instruction burdened the defendant with having to convince the jury that there was a "real possi-bility" that he was not guilty. 202 Ariz. at 415, ¶ 18, 46 P.3d at 426. Our supreme court rejected that argument. *Id.*

able doubt. *Portillo,* 182 Ariz. at 596, 898 P.2d at 974.

¶ 23 The answer is a simple one. *Portillo* expressly states that the requirement to give the reasonable doubt instruction as specified is imposed "pursuant to [the Arizona Supreme Court's] supervisory authority ... under Ariz. Const. art. 6 §§ 3 and 5[.]" 182 Ariz. at 596, 898 P.2d at 974. Article 6, Section 3 of the Arizona Constitution expressly provides that "[t]he Supreme Court shall have administrative supervision over all the courts of the State." If a particular judge persists in giving an instruction contrary to that which is mandated, our supreme court would clearly be able to take appropriate supervisory action. *See State v. Romanosky,* 176 Ariz. 118, 119, 121, 859 P.2d 741, 742, 744 (1993) (on remand, matter was reassigned to a different trial judge when the previous trial judge had refused to follow the law despite prior published opinions involving the same trial judge). This case does not involve such a trial judge.

¶ 24 Addressing the issue in this way, when the error is harmless, has the additional benefit of not penalizing victims by requiring a new trial. Ordering a new trial when there is harmless error penalizes not only victims, but the judicial system as a whole. It is also contrary to statute: "Neither a departure from the form or mode prescribed in respect to any pleadings or proceedings, nor an error or mistake therein, shall render the pleading or proceeding invalid, unless it actually has prejudiced, or tended to prejudice, the defendant in respect to a substantial right." A.R.S. § 13–3987 (2001).

¶ 25 Thus, there is no need from a uniformity perspective to require that a failure to precisely give a *Portillo* instruction is structural error and not subject to a harmless error analysis.

### Conclusion

¶ 26 The trial court was not at liberty to give the jury a reasonable doubt instruction that deleted portions of the *Portillo* instruction and substituted alternate language. That error, however, is subject to a harmless error analysis and was in fact harmless here. Accordingly, we affirm.

CONCURRING: JAMES B. SULT, Presiding Judge and E.G. NOYES, JR., Judge.