NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

JESUS ANDRES GONZALEZ, *Appellant*.

No. 1 CA-CR 21-0087
FILED 2-24-2022

---

Appeal from the Superior Court in Yuma County
No. S1400CR201700716
The Honorable David M. Haws, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice M. Jones
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Robert Trebilcock
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Vice Chief Judge David B. Gass and Judge Angela K. Paton joined.

---

**M c M U R D I E**, Judge:

¶1 Jesus Andres Gonzalez appeals from his convictions and sentences for first-degree murder and kidnapping, three counts of first-degree burglary, and seven counts of aggravated assault. Finding no error, we affirm.

## FACTS[1] AND PROCEDURAL BACKGROUND

¶2 While armed with a handgun, Gonzalez, then 17-years old, participated in three home invasions with six accomplices throughout an evening.

¶3 After entering the first residence, Gonzalez pointed the gun at a woman who awoke to noises in the kitchen. But the group found nothing of value and left empty-handed. Gonzalez pistol whipped the victim at the second residence after an accomplice bound the victim's hands and feet. The group left with a television, shirts, beverages, and an empty gun box. Gonzalez held a girl in a back room at the third home, threatened a woman with his gun, and shot and killed a man.

¶4 The jury found Gonzalez guilty. At the sentencing, the trial court imposed a life term for the first-degree murder conviction, for which Gonzalez will be eligible for release after 25 years. For the remaining convictions, the court imposed a combination of concurrent and consecutive sentences such that Gonzalez faces a cumulative minimum of 60.5 years' incarceration. Gonzalez appealed. We have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

---

[1] We view the facts in the light most favorable to sustaining the judgment. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

## DISCUSSION

### A. The Superior Court Did Not Err by Finding Gonzalez Competent to Stand Trial.

**¶5** Gonzalez argues the court committed structural error by failing to *sua sponte* order a mid-trial medical assessment of his competency to stand trial. We find no error, structural or otherwise.

**¶6** Although the trial court is "under a continuing duty to inquire into a defendant's competency, and to order a [Rule] 11[2] examination *sua sponte* if reasonable grounds exist," *State v. Amaya-Ruiz*, 166 Ariz. 152, 162 (1990), courts generally assume that "a criminal defendant has sufficient mental competence to stand trial." *Indiana v. Edwards*, 554 U.S. 164, 174 (2008). "Reasonable grounds exist if there is sufficient evidence to indicate that the defendant is not able to understand the nature of the proceedings against him and to assist in his defense." *State v. Salazar*, 128 Ariz. 461, 462 (1981). To determine whether a Rule 11 examination is appropriate, a court may rely on its observations of the defendant's behavior in court. *State v. Glassel*, 211 Ariz. 33, 44, ¶ 28 (2005). A court also has the discretion to order a defendant's preliminary examination by a mental health expert to help the court determine whether reasonable grounds require further investigation. A.R.S. § 13-4503(B); Ariz. R. Crim. P. 11.2(c). Trial courts are presumed to know their responsibility not to subject an incompetent defendant to trial. *See State v. Trostle,* 191 Ariz. 4, 22 (1997) ("Trial judges are presumed to know the law and to apply it in making their decisions.") (quoting *Walton v. Arizona*, 497 U.S. 639, 653 (1990)).

**¶7** On the eighth day of trial, Gonzalez informed his lawyer that he was "having [a] hard time dealing with my schizophrenia, . . . and I am hearing voices." Defense counsel confirmed with the court that Gonzalez was taking his "medication" and explained he planned to request an "evaluat[ion]" of Gonzalez at the jail. The court stated this was the first time it learned "there were any issues like hearing voices with the defendant."

**¶8** When the proceedings commenced the next day, counsel told the court that Gonzalez "was seen, verified that his medication was given . . . [and Gonzalez] had night tremors, was up all night, and was throwing up." The court referred to a "diagnosis" made four or five years

---

[2] *See* Ariz. R. Crim. P. 11 (providing procedures for determining a criminal defendant's competency to stand trial).

before the trial and noted, "This was never brought up. I looked at the file. There's been no Rule 11." The court then requested Gonzalez's mental health records. The court also explained it would "see if I can expedite someone seeing [Gonzalez at the jail.]" The court recessed for four days and conducted an *in-camera* review of Gonzalez's medical records.

**¶9**        The court noted that Gonzalez's medical records did not show a schizophrenia diagnosis when the trial resumed. Still, they did show that Gonzalez "had heard voices . . . on a number of occasions" while in custody awaiting trial. The court also noted that for the three years Gonzalez had been in pretrial detention, "he's been receiving treatment and . . . medications," and defense counsel never filed "a motion for Rule 11." Finding nothing to suggest that Gonzalez was incompetent, the court determined Gonzalez could continue with the trial.

**¶10**        The parties dispute the applicable standard of review for this claim. Contrary to Gonzalez's contention that we should review for structural error, the State asserts fundamental error review applies. "Regardless of how an alleged error ultimately is characterized, however, a defendant on appeal must first establish that some error occurred." *State v. Diaz*, 223 Ariz. 358, 360, ¶ 11 (2010); s*ee State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018) ("[T]he first step in fundamental error review is determining whether trial error exists."); *State v. Valverde*, 220 Ariz. 582, 584–85, ¶ 10 (2009) (discussing structural error review) (abrogated on other grounds by *Escalante*, 245 Ariz. at 140–41, ¶¶ 15–16). Because we conclude that no error occurred, we need not determine the standard to review such a claim.

**¶11**        Although he may have had a mental disorder during the trial, Gonzalez's argument fails because he does not point to anything in the record that shows his inability to understand the proceedings or assist in his defense. *See* A.R.S. § 13-4501(2) ("The presence of a mental illness, defect or disability alone is not grounds for finding a defendant incompetent to stand trial."). Instead, Gonzalez refers to the results of his Rule 26.5 evaluation. *See* Ariz. R. Crim. P. 26.5 (superior court may order a defendant to undergo mental health examinations or diagnostic evaluations before sentencing). Those results, however, do not help Gonzalez. Not only was the Rule 26.5 assessment conducted six months after the jury returned the verdicts, but the results of the evaluation reveal he understood the charges against him, the concept of a plea bargain, his right to remain silent, and the roles of his attorney, the prosecutor, judge, and jury.

**¶12**        Given the court's ability to observe Gonzalez and absent a showing that he did not understand the nature of the proceedings, we find

no error in the court's determination that no reasonable grounds existed to order a formal competency evaluation. The court, therefore, did not abuse its discretion. *See* A.R.S. § 13-4503(B) ("The court *may* request that a mental health expert assist the court in determining if reasonable grounds exist for examining the defendant.") (emphasis added). No error occurred.

## B.  Gonzalez's Sentence Is Not Cruel and Unusual Punishment.

¶13  Gonzalez argues that because he was a juvenile when he committed the offenses, his "de facto life sentence" of at least 60.5 years in prison violates both the Eighth Amendment's prohibition against cruel and unusual punishment and the corollary provision of the Arizona constitution. *See* Ariz. Const. art. II, § 15 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.").

¶14  The Arizona Supreme Court has rejected this very argument. *State v. Soto-Fong*, 250 Ariz. 1, 3, ¶ 1 (2020). Although Gonzalez asserts that *Soto-Fong* was wrongly decided, we must follow our supreme court's decisions. *State v. Sullivan*, 205 Ariz. 285, 288, ¶ 15 (App. 2003). We thus do not address the argument further.

¶15  Alternatively, Gonzales invites us to find that his minimum cumulative sentence of 60.5 years is unconstitutional because it is so disproportionate to the offenses committed as to "shock the conscience." But given Gonzalez's violent crimes against several victims at different locations, we discern no disproportionate sentencing.

## CONCLUSION

¶16  We affirm Gonzalez's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA