NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

RUSSELL EUGENE SHIELDS, II, *Appellant*.

No. 1 CA-CR 13-0133
FILED 03/13/2014

Appeal from the Superior Court in Mohave County
No. S8015CR201100954
The Honorable Derek C. Carlisle, Judge Pro Tempore

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Donn Kessler and Judge Patricia K. Norris joined.

---

**P O R T L E Y,** Judge:

¶1 Defendant Russell Eugene Shields, II, appeals his conviction and sentence for possession of dangerous drugs, a class 4 felony. He argues that: (1) there was insufficient evidence to support his conviction; (2) the trial court committed reversible error by failing to instruct the jury on his right not to testify at trial; and (3) the court abused its discretion in imposing the sentence in this case. Because we find no legal error, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

¶2 A multi-law enforcement agency narcotics task force called the Mohave Area General Narcotics Enforcement Team executed a search warrant on Shields' Kingman home and discovered a .15 gram "shard of methamphetamine" on the inside molding above the door to the master bedroom. They also discovered a digital scale on a kitchen counter and a number of "smaller plastic baggies" inside a kitchen drawer.

¶3 Shields was subsequently indicted for possession of dangerous drugs (methamphetamine) and possession of drug paraphernalia. The State also filed allegations that Shields had prior felony convictions and was on felony release.

¶4 The case proceeded to trial. After the State rested its case, the court granted Shields' motion pursuant to Arizona Rule of Criminal Procedure ("Rule") 20 in part and dismissed the possession of drug paraphernalia charge. The jury subsequently found Shields guilty of

---

[1] We view the facts in the light most favorable to sustaining the jury's verdict and resolve all reasonable inferences against defendant. *State v. Vandever*, 211 Ariz. 206, 207 n.2, 119 P.3d 473, 474 n.2 (App. 2005).

possession of dangerous drugs, and that he committed the offense while on release.

**¶5**        At the sentencing hearing, the trial court found that Shields had one historical prior felony.  He was then sentenced to prison for five years.

## DISCUSSION

*I.    Sufficiency of the Evidence*

**¶6**        Shields argues that the trial court erred by denying his Rule 20 motion to dismiss the possession of dangerous drug charge.  He contends that there was insufficient evidence that he possessed the methamphetamine found on top of the molding in his bedroom.  We review the question of whether the evidence was sufficient to withstand the Rule 20 motion de novo.  *State v. West*, 226 Ariz. 559, 562, ¶ 15, 250 P.3d 1188, 1191 (2011).

**¶7**        In reviewing the record, the key question is "whether the record contains substantial evidence to warrant a conviction."  *Id.* at ¶ 14 (internal quotation marks omitted).  Substantial evidence "is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt."  *Id.* at ¶ 16 (quoting *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990)) (internal quotation marks omitted).  "Both direct and circumstantial evidence should be considered in determining whether substantial evidence supports a conviction."  *Id.*  If reasonable minds may differ on the inferences to be drawn from the facts, the case must be submitted to the jury and the trial judge has no discretion to enter a judgment of acquittal.  *Id.* at 563, ¶ 18, 250 P.3d at 1192.

**¶8**        Here, the trial court was faced with the question of whether Shields was in actual or constructive possession of the drugs found on top of the bedroom molding.[2]  The court concluded that the jury had to decide

---

2        To "possess" is defined as "knowingly to have physical possession or otherwise to exercise dominion or control over property."  Ariz. Rev. Stat. ("A.R.S.") § 13-105(34) (West 2014).  Constructive possession exists when an item of property is found in a place under a defendant's dominion or control "and under circumstances from which it can be reasonably inferred that the defendant had actual knowledge of the existence of the [property]."  *State v. Cox*, 214 Ariz. 518, 520, ¶ 10, 155 P.3d

the issue because the jury must determine whether Shields had actual or constructive possession of the "shard" discovered on the molding; a decision it would have to make in determining whether the State met its burden of proof beyond a reasonable doubt.

**¶9**　　　　The trial court did not err.  The undisputed trial evidence established that the only drugs found in the house were in the master bedroom and that only Shields and his girlfriend used the master bedroom.  Neither the court nor the jury heard any evidence that suggested that Shields' friend, Joshua, was in the master bedroom at any time.

**¶10**　　　　The testimony also established that the shard was on top of the door molding some seven feet off the master bedroom floor.  The court and jury heard that Shields was "five-seven to five-eight" and his girlfriend was "five-two."  The jury, as a result, had to decide whether in the shared space it would be easier for Shields to reach the top of the doorway; whether it was more likely that his girlfriend placed the drugs there; or whether someone else placed the shard where it was found.  The testimony required the jury, not the judge, to determine the facts and who, if anyone, was responsible for the drugs on the molding.

**¶11**　　　　Because the jury had to decide the facts, the trial court did not err by denying the Rule 20 motion.  *See id.*  And, based on our independent review of the trial evidence and the resulting reasonable inferences, as well as the jury instructions on actual possession, constructive possession and mere presence, we find that substantial evidence supports the guilty verdict.  *See id.* at 562, ¶ 14, 250 P.3d at 1191.

*II.　　Failure to Instruct on Defendant's Right Not to Testify*

**¶12**　　　　At the close of the case, the trial court reviewed the final jury instructions with counsel.  The trial court stated that it would not give the

357, 359 (App. 2007).  Furthermore, it is not necessary to show that a defendant exercised exclusive possession or control over the drugs or the place in which the drugs were found; "control or right to control is sufficient."  *State v. Curtis*, 114 Ariz. 527, 528, 562 P.2d 407, 408 (App. 1977); *see State v. Miramon*, 27 Ariz. App. 451, 452, 555 P.2d 1139, 1140 (1976) (noting that possession of narcotic drugs may be sole or joint, and two or more persons may have joint possession thereof).

standard instruction that a defendant is not required to testify on his own behalf.  Instead, the court stated that it would tell the jury that:  "The State must prove [guilt] beyond a reasonable doubt, based on the evidence.  The Defendant is not required to produce evidence of any kind."  The court noted that its proposed instruction would essentially be applicable whether Shields or other witnesses testified or did not testify.

¶13        Defense counsel objected to the proposed instruction because "it [didn't] specifically talk about the Defendant testifying."  She stated that she preferred to have the court give the jury instruction that stated, "The Defendant is not required to testify, and it would be acting on his attorney's advice," along with the instruction that specified, "If the defendant did not testify, they're not to hold that against him."

¶14        The trial court overruled the objection by reasoning:

> Well, the instruction that is left says:  "The Defendant is not required to produce evidence of any kind.  The decision on whether to produce any evidence is left to the Defendant, acting with the advice of an attorney.  The Defendant's decision not to produce any evidence is not evidence of guilt."  The one that was taken out is:  "You must not conclude the Defendant is likely to be guilty because the Defendant did not testify.  The Defendant [is] not required to testify, acting with the advice of an attorney.  You must not let this choice affect your deliberations in any way."
>
> And the only difference is one says he's not required to produce evidence of any kind; the other says he's not required to testify.  That's the primary difference.  And evidence, as they learned on the first page, means the testimony of witnesses and the exhibits introduced into court, so not required to produce evidence of any kind means he's not required to produce any testimony, and that would include his own testimony.  So I think it is covered by the instruction which the Court plans to give, and it would be redundant to include it twice.

> And the instruction that I am giving is more encompassing because he's not producing any evidence in this case, including his own testimony.

> So having considered your request, Ms. Dees, I am not going to give the Defendant need not testify instruction.

Accordingly, the trial court instructed the jury:

> The State must prove guilt beyond a reasonable doubt based on the evidence. The Defendant is not required to produce evidence of any kind. The decision whether to produce any evidence is left to the Defendant acting with the advice of an attorney. The Defendant's decision not to produce any evidence is not evidence of guilt.

**¶15**　　　　Here, Shields argues that the trial court committed reversible error by failing to give the standard jury instruction when a defendant does not testify. He argues that the failure of the court to include the specific language that the jury was not to "draw any negative inference" from his failure to testify deprived him of a fair trial by possibly "tilt[ing] the scales toward conviction."

**¶16**　　　　Generally, we review the refusal to give a jury instruction for an abuse of discretion. *State v. Moody*, 208 Ariz. 424, 467, ¶ 197, 94 P.3d 1119, 1162 (2004). When assessing the adequacy of jury instructions on appeal, we view the instructions in their entirety to determine whether they adequately reflect the law. *State v. Ovante*, 231 Ariz. 180, 188, ¶ 35, 291 P.3d 974, 982 (2013). "A court is not required to give a separate instruction if its substance has already been covered by other instructions, and a conviction will not be reversed based on the instructions unless, taken as a whole, they misled the jurors." *Id.* (citation omitted) (quoting *State v. Zaragoza*, 221 Ariz. 49, 53, ¶ 15, 209 P.3d 629, 633 (2009)) (internal quotation marks omitted).

**¶17**　　　　There are, however, certain instructions that fall outside of the general rule of review. For example, trial courts must give the *Portillo* reasonable doubt instruction. *State v. Portillo*, 182 Ariz. 592, 596, 898 P.2d 970, 974 (1995) ("Pursuant to our supervisory authority . . . we instruct that in every criminal case trial courts shall give the reasonable doubt

instruction that we set forth below."); *State v. Sullivan*, 205 Ariz. 285, 287-88, ¶¶ 12-16, 69 P.3d 1006, 1008-09 (App. 2003) ("[T]here is no question that the trial court erred by removing a portion of the mandated *Portillo* instruction and replacing it with language of its own choosing.").

**¶18**        A trial court must also, upon request, instruct the jury that a defendant is not required to testify; the decision on whether to testify is left to the defendant, acting with the advice of his attorney; they must not conclude that the defendant is likely to be guilty because he does not testify; and they must not discuss this fact or let it affect their deliberations in any way. *State v. Piper*, 113 Ariz. 390, 392-93, 555 P.2d 636, 638-39 (1976) ("The trial court is required . . . to give this instruction upon request of a defendant.").[3]  In that case, Piper was tried and convicted of robbery. *Id.* at 391, 555 P.2d at 637.  He was tried with three co-defendants, who were

---

[3]        In *Piper*, the instruction was found in Recommended Arizona Jury Instructions Standard Criminal 8, which stated:

> The state must prove all of its case against the defendant with evidence that the state itself gathers.  Therefore the defendant is not required to testify.  The decision on whether to testify is left to the defendant, acting with the advice of his attorney.  You must not conclude that the defendant is likely to be guilty because he does not testify.  You must not discuss this fact or let it affect your deliberations in any way.

*Piper*, 113 Ariz. at 392, 555 P.2d at 638.  The instruction is now found at Revised Arizona Jury Instructions ("RAJI") Standard Criminal 15 (defendant need not testify), which provides that:

> The State must prove guilt beyond a reasonable doubt based on the evidence.  You must not conclude that the defendant is likely to be guilty because the defendant did not testify.  The defendant is not required to testify.  The decision on whether or not to testify is left to the defendant acting with the advice of an attorney.  You must not let this choice affect your deliberations in any way.

later granted new trials, *id.*, but argued that the trial court erred when the court gave the instruction about his right not to testify over counsel's objection. *Id.* at 393, 555 P.2d at 639. Although our supreme court found that the court did not err by giving the instruction over the objection, the court started the discussion by stating that the instruction should be given when requested. *Id.*

**¶19**   Here, although the trial court was attempting to streamline the instructions, *Piper* required the court to give the instruction once it was requested. Consequently, the court erred by refusing to give the requested instruction that Shields did not have to testify and that his silence could not be held against him.

**¶20**   We now turn to whether the error is harmless error. *Sullivan*, 205 Ariz. at 288-89, ¶¶ 16, 19, 69 P.3d at 1009-10 (stating that when the error is clear "[t]he trial court's error is subject to a harmless error analysis"). Specifically, we review whether the failure to give the requested instruction influenced the verdict, given the instructions that the court read to the jury. *Id.* at 289, ¶ 21, 69 P.3d at 1010; *State v. McKeon*, 201 Ariz. 571, 573, ¶ 9, 38 P.3d 1236, 1238 (App. 2002).

**¶21**   During the *voir dire,* which occurred on day one of the trial, the trial court told all the prospective jurors that:

> The defendant is presumed by law to be innocent. This means the defendant is not required to produce any evidence or to prove innocence.
>
> Also, a defendant in a criminal case has a right to not testify at trial. The exercise of this right cannot be considered by the jury in determining guilt or innocence.
>
> Is there anyone who does not understand the principles of law I have just stated? The record should reflect there are no hands shown.
>
> Is there anyone who does not agree with these things or does not believe they should be the law? The record should reflect there are no hands shown.

¶22 All the venire persons were told that they were not to consider Shields' exercise of his right not to testify as any evidence of his guilt. There is no indication in the record that the jurors who were ultimately empanelled did not understand that the instructions were the law or that they were unwilling or unable to follow the instructions.

¶23 Once selected, the jurors were preliminarily instructed by the court. The court stated a number of times that the State must prove the defendant guilty. First, after telling the jurors that Shields had pled not guilty, the court told them that "[t]his means that the State must prove the defendant guilty beyond a reasonable doubt." After describing the burden of proof, the court stated that the "State must meet its burden of proof with its own evidence [and] [t]he defendant is not required to testify. The decision whether to testify is left to the defendant, acting with the advice of his attorney."

¶24 At the conclusion of the trial, which was the second day of the trial, the court gave its instruction. Although the court erred by not giving the requested instruction, there is nothing in the record that indicates that the failure to give the specific instruction caused prejudice. The jurors heard the correct instruction on day one of the trial during *voir dire* and later again in the preliminary instructions. On day two, they heard the evidence and were instructed after all the evidence had been presented. As a result, we are satisfied beyond a reasonable doubt in this short, two-day case that the court's failure to give RAJI Criminal Standard 15 concerning Shield's right not to testify and that his silence could not be used against him did not affect the verdict.

*III. Sentencing Error*

¶25 Shields was sentenced to the minimum prison term of three years for the possession conviction (with one historical felony) plus two years for having committed the offense on release. [4] He now argues that the court did not impose a "mitigated sentence" plus two years for a class 4 felony with one historical prior. Shields did not raise the argument before the trial court and therefore has waived appellate relief unless he can prove that fundamental error exists and that the error caused him prejudice. *State v. Henderson,* 210 Ariz. 561, 567, ¶¶ 19-20, 115 P.3d 601, 607 (2005). "[T]he imposition of an illegal sentence constitutes

---

[4] Although the trial court found that Shields had a historical felony conviction, the State did not allege any aggravating factors.

fundamental error." *State v. Martinez,* 226 Ariz. 221, 224, ¶ 17, 245 P.3d 906, 909 (App. 2011). However, a sentence within statutory limits is within the trial court's discretion, and we will not modify an otherwise lawful sentence unless it constitutes an abuse of discretion. *State v. Stotts,* 144 Ariz. 72, 87, 695 P.2d 1110, 1125 (1985) (stating that an abuse of discretion would be "characterized by arbitrariness, capriciousness, or failure to conduct an adequate investigation into the facts relevant to sentencing").

¶26        The range of sentence for a class 4 felony with one prior historical felony conviction is 2.25 years (mitigated), 3 years (minimum), 4.5 years (presumptive), 6 years (maximum), 7.5 years (aggravated). Ariz. Rev. Stat. § 13-703(B)(2), (F), (I) (West 2014). The statutory maximum sentence for a case with no aggravating or mitigating factors is the presumptive sentence. *See State v. Martinez,* 210 Ariz. 578, 583, ¶ 17, 115 P.3d 618, 623 (2005). Anything less than the "presumptive" sentence is considered a "mitigated" sentence because the actual sentence is lessened or made less severe.

¶27        Shields claims that because the trial court used the word "mitigated" to describe the term of years it intended to impose prior to adding the 2-year enhancement, it actually intended to impose a base sentence of 2.25 years and not the 3 years imposed. As a result, Shields asks that we either reduce his total sentence to 4.5 years or remand the case to the trial court for further "clarification."

¶28        A trial court is presumed to know and follow the law. *State v. Medrano*, 185 Ariz. 192, 196, 914 P.2d 225, 229 (1996). Here, defense counsel requested "a mitigating sentence" — not a super mitigated sentence, or the lowest sentence possible, or even a sentence of 2.25 years. The court specifically stated that it was going to impose a 3-year term, which is a mitigated sentence within the lawful statutory range of sentence for the offense. There is no indication in the record that the court was confused about either the sentencing range or the various options available to it within that range. There is no indication that the court's sentencing decision was characterized by "arbitrariness, capriciousness, or failure to conduct an adequate investigation into the facts relevant to sentencing." *Stotts,* 144 Ariz. at 87, 695 P.2d at 1125. Consequently, we find no error, let alone fundamental error.

**CONCLUSION**

¶29      For the foregoing reasons, we affirm Shields' conviction and sentence.

