981 P.2d 595

**STATE of Arizona, Appellee,**

v.

**Diane Lee THOMPSON, Appellant.**

No. 1 CA–CR 98–0296.

Court of Appeals of Arizona, Division 1, Department D.

April 27, 1999.

Janet A. Napolitano, The Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and J.D. Nielsen, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Garrett W. Simpson, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

KLEINSCHMIDT, Judge.

¶ 1 The Defendant was convicted of six counts of forgery and five counts of tampering with a public record in connection with transactions she processed as an employee of the Motor Vehicle Division ("MVD") of the Arizona Department of Transportation. We affirm.

¶ 2 The case arose as follows. A man named Michael Jimenez made a business of processing MVD documents to register motor vehicles for people, like illegal aliens, who did not want to do it themselves. Jimenez made frequent visits to the MVD, and the Defendant, whom Jimenez was paying under the table, would take him out of turn and process more than the maximum of four transactions at a given time in violation of MVD policy. The Defendant also reissued some titles improperly and, contrary to policy, destroyed some original titles.

¶ 3 The Defendant was fired when her supervisors discovered what she was doing. She was indicted and found guilty of six counts of forgery and five counts of tampering with a public record.

¶ 4 The forgery statute that the Defendant was charged with violating reads as follows:

A. A person commits forgery if, with intent to defraud, such person:

1. Falsely makes, completes or alters a written instrument; . . . .

Ariz.Rev.Stat. Ann. ("A.R.S.") § 13–2002.

¶ 5 The State presented the following evidence with respect to the forgery counts for which the Defendant was convicted. As to count seven, which alleged forgery of a vehicle registration in the name of Emilio Alvarado, the State proved that the vehicle identification number ("VIN") had been altered from how it appeared on the vehicle's California registration and that the vehicle's sta-

tus was upgraded from "salvaged" on the California registration to "regular."

¶ 6 With respect to count ten, which alleged that the Defendant forged a vehicle inspection form, the State presented evidence that the Defendant executed the inspection form verifying that she had physically inspected the vehicle when in fact she had not done so.

¶ 7 With respect to counts twelve and thirteen, which alleged that the Defendant had forged a lost title form and a vehicle registration in the name of Jose Amarillas, the State presented evidence that the Defendant processed a registration based on an affidavit indicating that the original title had been lost when it actually was torn up and placed in her trash container.

¶ 8 With respect to count sixteen, which alleged that the Defendant forged a vehicle registration in the name of Salvador Rangel R., the State presented evidence that the Defendant processed a transfer of title from Antonio Ortiz to Salvador Rangel R., then completed a vehicle registration in the name of Salvador Rangel R. and signed his name without a power of attorney.

¶ 9 With respect to count eighteen, which alleged that the Defendant forged a vehicle registration in the name of Jose Fernandez, the State presented evidence that the Defendant had processed a transfer of title from Jaime Nevarez Barraza to Jose Fernandez, then completed a vehicle registration in the name of Jose Fernandez and signed his name without a power of attorney. The State's computer file showed that the car was actually registered in the name of Antonio Ortiz and then transferred to Jose Fernandez.

¶ 10 With respect to the tampering counts, fourteen, twenty-eight, twenty-nine, thirty, and thirty-three, the State presented evidence that the Defendant tore up and discarded five different original titles instead of preserving them so they could be microfilmed to maintain an accurate registration history of the vehicle.

¶ 11 After her arrest, the Defendant admitted to the police that she knew that an inspection included physically verifying the VIN number on the actual vehicle, that there was no reason to tear up a title and throw it away, and that she should not sign another's name to an application for title without a power of attorney. After detectives told the Defendant about the documents they had found in her trash, she admitted that she had done some of the things for which she was charged and knew what she was doing was wrong.

¶ 12 The Defendant argues that her convictions were based on insufficient evidence because the State presented no proof that she intended to defraud anyone. There was no evidence that any of the vehicles to which these transactions related were stolen. It was shown that some of them in fact were not stolen, and that if others were, the Defendant had no knowledge of that. Moreover, the record does not disclose, and the briefs do not explain, the purpose of these machinations by Jimenez and the Defendant.

¶ 13 With respect to the forgery counts, the State must prove an intent to defraud. *See* A.R.S. § 13–2002. An intent to defraud may be inferred from circumstantial evidence, and it is irrelevant whether anyone was actually injured. *See State v. Tucker*, 26 Ariz.App. 376, 378, 548 P.2d 1188, 1190 (1976).

> [F]raudulent intent, as a mental element of crime, is often difficult to prove by direct evidence. In many cases it must be inferred from acts of the parties, and inferences may arise from a combination of acts, even though each act or instance, standing by itself may seem unimportant.

*State v. Maxwell*, 95 Ariz. 396, 399, 391 P.2d 560, 562 (1964) (quoting *Gates v. United States*, 122 F.2d 571, 575 (10th Cir.1941)). Nor is it necessary that there be an intent to defraud a particular person. *See State v. Watkins*, 532 So.2d 1187, 1189 (La.App.1988). Typically an intent to defraud is found where the defendant intends to cause a pecuniary loss or gain. *See State v. McMurry*, 184 Ariz. 447, 450, 909 P.2d 1084, 1087 (App. 1995).

¶ 14 The evidence was sufficient with regard to count seven. The Defendant's actions in changing the status of the car from "salvaged" to "regular" could result in injury

to anyone who relied on that information in valuing the vehicle because it would lead one to believe the car had greater value than it actually did.

¶ 15 The remaining forgery counts require a different analysis because it is unclear how anyone might have suffered a pecuniary loss as a result of the Defendant's actions. There is no proof that any of these vehicles were being registered to conceal a theft. Fraud, however, can be committed even if no one loses money or something of value. In *United States v. Tommasello*, 160 F.2d 348, 349 (2d Cir.1947), the Defendant was charged with defrauding the United States by forging a prescription that indicated that the drug sought was for someone else when in fact the Defendant wanted it for himself. In response to the contention that the Defendant did not defraud the United States because he could have obtained the prescription in his own name, the court ruled,

> The United States is defrauded within the meaning of the authorities when a person subject to the provisions of the narcotic act, as Tommasello was, interferes with the system of recording the disposition of narcotics as he is alleged to have done in the present case. It would not be necessary for him to attempt to secure any monetary advantage.

*Id.* at 350. *See also Johnson v. Warden*, 134 F.2d 166, 167 (9th Cir.1943) ("It is well settled that in order to establish a purpose to defraud the United States ... it is not necessary to prove that the government would thereby suffer a pecuniary loss. It is enough that the unlawful activity be engaged in for the purpose of frustrating the administration of a statute, or that it tends to impair a governmental function."); *United States v. Goldsmith*, 68 F.2d 5, 7 (2d Cir.1933) ("[I]t is clearly established that, to defraud the United States, pecuniary loss is not necessary; any impairment of the administration of its governmental functions will suffice."). The cases that hold that an intent to defraud requires an intent to cause a pecuniary loss deal with statutes, like the mail fraud statute, that make it clear that an intent to cause a pecuniary loss is an element of the crime.

*See McNally v. United States*, 483 U.S. 350, 359, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987).

¶ 16 The MVD performs a vital function in maintaining and keeping accurate motor vehicle records. By forging vehicle registrations, the Defendant intentionally undermined the authenticity and accuracy of those records and impaired a government function.

¶ 17 We have considered the fact that the jury was not instructed on this precise theory of the case. The instructions defined "defraud" as "to get something of value from somebody or take something of value from somebody through the use of falsity or misrepresentation." The prosecutor, however, argued that the Defendant did not care whom she was cheating and that the State was defrauded of its interest in the sanctity and clarity of its records relating to valuable property. The definition of "intent to defraud" the jury was given was broad enough to cover this concept, and the prosecutor's argument was legally correct. The evidence supports the convictions.

¶ 18 The Defendant's argument with respect to the tampering charges fails for the same reason. If that were not enough, the tampering statute, A.R.S. section 13–2407, requires an intent to defraud *or an intent to deceive*. The destruction of titles, which the Defendant knew was wrong, certainly demonstrates an intent to deceive.

¶ 19 The Defendant objected to the trial judge's jury instruction on "reasonable doubt" pursuant to *State v. Portillo*, 182 Ariz. 592, 596, 898 P.2d 970, 974 (1995). The trial judge expressed his own misgivings about the instruction, but determined that he could not refuse to give it because the Arizona Supreme Court required it be given as a matter of law in all criminal cases. *Id.*

¶ 20 On appeal, the Defendant urges this court to revisit and to overrule *Portillo*. We are bound by the decisions of the Arizona Supreme Court and have "no authority to overrule, modify, or disregard them...." *Myers v. Reeb*, 190 Ariz. 341, 342, 947 P.2d 915, 916 (App.1997) (quoting

*City of Phoenix v. Leroy's Liquors, Inc.,* 177 Ariz. 375, 378, 868 P.2d 958, 961 (App.1993)). The appropriate forum for the Defendant's argument is the Arizona Supreme Court. *See State v. Young,* 192 Ariz. 303, 312, 965 P.2d 37, 46 (App.1998); *Reeb,* 190 Ariz. at 342, 947 P.2d at 916.

¶ 21 We affirm the decision of the trial court.

CONCURRING: MICHAEL D. RYAN, Presiding Judge, and RUDOLPH J. GERBER, Judge.