NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DANIEL PATRICK MCFARLAND, *Appellant.*

No. 1 CA-CR 17-0679
FILED 10-25-2018

Appeal from the Superior Court in Mohave County
No. S8015CR201700057
The Honorable Richard Weiss, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Jon W. Thompson.

---

**P E R K I N S**, Judge:

¶1          Daniel McFarland appeals his conviction and sentence for forgery.  For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2          We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013). On December 10, 2016, T.C., the manager of a temporary labor service, assigned nine workers, including McFarland, to dig at a jobsite. Before the workers reported to the jobsite that morning, T.C. provided each of them with a "ticket," or time sheet, that listed the name of the jobsite supervisor, C.B. To receive payment, each worker was required to have his ticket signed by the supervisor.

¶3          At the end of the workday, McFarland was the first worker to report back to T.C. and tender his ticket for payment. Upon receiving his ticket, T.C. immediately noticed that McFarland had retained the customer's copy, which was unusual, but she nonetheless accepted his ticket. As the other workers subsequently submitted their tickets, however, T.C. observed that only McFarland's ticket bore C.B.'s signature, and all other tickets were signed by A.S. After discussing this discrepancy with C.B., T.C. contacted the police.

¶4          In response to T.C.'s report, an investigating officer later testified he reviewed an "affidavit of forgery" from C.B. regarding McFarland's ticket. Comparing C.B.'s signature on the affidavit with the signature on McFarland's ticket, the officer concluded the signatures did not match. The State then charged McFarland with one count of forgery, a class 4 felony.

¶5          On September 6, 2017, five days before trial was scheduled to commence, McFarland moved to continue the trial to substitute counsel. McFarland explained he was indigent at the time the court appointed counsel and that his family had since "pool[ed]" resources, providing the

funds necessary "to retain private counsel." In his request, McFarland did not dispute that appointed counsel was prepared to proceed, but instead argued he had a right to counsel of his choice. McFarland asked for an unspecified delay, stating at least a three to four-week continuance was necessary for private counsel to ensure "full disclosure [wa]s in hand."

¶6          In its response, the State asserted it "would be unfairly prejudiced" by the requested continuance. Noting several issues, the State argued the inconvenience of the delay weighed against granting the motion. The trial court denied McFarland's request for a continuance without a hearing. The matter then proceeded to trial, as scheduled, with appointed counsel.

¶7          At trial, A.S. testified that he was the jobsite supervisor on December 10, 2016. Before permitting workers to enter the jobsite that morning, he met them at the front gate and had them sign a roster. As reflected on the sign-in sheet, the other workers signed the roster, but McFarland did not.

¶8          When the prosecutor asked A.S. about his signature on the other workers' time sheets, notwithstanding that the tickets identified C.B. as the supervisor, A.S. explained that C.B. was onsite only that morning and left before noon. Accordingly, A.S. alone signed the workers' tickets at the end of the day.

¶9          Taking the stand in his own defense, McFarland testified that on the day in question, he reported to the assigned jobsite forty minutes early. The jobsite was initially empty and a white truck pulled up about half an hour after McFarland arrived. The truck's driver asked McFarland if he was a temporary worker, and after he responded affirmatively, the pair left to a secondary location approximately two miles from the assigned jobsite. According to McFarland, he and the driver then spent nearly eight hours digging together, and the driver signed his ticket at the end of the workday. Avowing that he believed the driver was the jobsite supervisor, McFarland denied intentionally submitting a forged time sheet.

¶10         The jury found McFarland guilty as charged, and the trial court sentenced him to a one-year period of probation. McFarland timely appealed.

## DISCUSSION

### I.      Sufficiency of the Evidence and Rule 20 Motion

¶11         After the State rested, McFarland moved for judgment of acquittal pursuant to Arizona Rule of Criminal Procedure 20. Finding the State had provided sufficient evidence "to move" the case "forward," though failing to find the evidence "substantial," the trial court denied the motion. McFarland argues the evidence was insufficient to support his conviction and thus the trial court erroneously denied his motion for judgment of acquittal.

¶12         We review a trial court's ruling on a Rule 20 motion *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶¶ 14–15 (2011). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at ¶ 16 (internal quotation omitted). In reviewing the sufficiency of the evidence, we test the evidence "against the statutorily required elements of the offense," *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005), and neither reweigh conflicting evidence nor assess the credibility of witnesses, *State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 38 (App. 2013). Sufficient evidence may be direct or circumstantial, *West*, 226 Ariz. at 562, ¶ 16, and a judgment of acquittal is appropriate only when "there is no substantial evidence to warrant a conviction." Ariz. R. Crim. P. 20(a) (2017). A defendant who presents a defense "waives any error if his case supplies evidence missing in the state's case." *State v. Nunez*, 167 Ariz. 272, 279 (1991). In such circumstances, we consider all the evidence presented at trial. *Id*.

¶13         As charged in this case, a person commits forgery "if, with intent to defraud, the person . . . [o]ffers or presents . . . a forged instrument or one that contains false information." Ariz. Rev. Stat. ("A.R.S.") § 13-2002(A)(3) (2018). A "[f]orged instrument" is a "written instrument that has been falsely made, completed or altered." A.R.S. § 13-2001(8) (2018).

¶14         An intent to defraud may be proven through circumstantial evidence, *State v. Thompson*, 194 Ariz. 295, 297, ¶ 13 (App. 1999), and is generally a "question of fact for the jury." *State v. Hernandez*, 4 Ariz. App. 451, 452 (1966). Because a mental state "is often difficult to prove," an intent to defraud may be inferred from the parties' conduct, particularly actions that "cause a pecuniary loss or gain." *Thompson*, 194 Ariz. at 297, ¶ 13 (internal quotation omitted).

¶15 At trial, A.S. testified that: (1) he required each worker to sign a roster before entering the jobsite, yet McFarland failed to do so; and (2) C.B. was not at the jobsite at the end of the workday, and therefore did not sign any worker's ticket. In addition to this testimony, the State presented evidence that C.B. signed an affidavit avowing that he did not sign McFarland's ticket and his signature had been forged.

¶16 During the defense's presentation, McFarland admitted that he submitted the ticket in question and did not dispute that it was not actually signed by C.B. Instead, he contested only the element of his intent, arguing that he had unwittingly worked the entire day under false pretenses. In other words, McFarland believed he had dug for the company that hired him through the temporary agency and assumed that the driver he had worked with was a supervisor "authorized" to sign his time sheet.

¶17 Although McFarland provided an explanation for the forged time sheet that absolved him of any wrongdoing, the jury was not required to believe him. *See State v. Fimbres*, 222 Ariz. 293, 300, ¶ 21 (App. 2009) (deferring to jury's assessment of a defendant's credibility and the weight to be given to his testimony when the defendant testified he did not act with an intent to defraud). Indeed, the State introduced the roster that showed workers began arriving by 7:22 a.m., thereby rebutting McFarland's claim that he had arrived at the assigned jobsite at 7:20 a.m. and found it vacant for about half an hour. Moreover, contrary to McFarland's claim on appeal, the State was not required to prove that McFarland forged C.B.'s signature. Rather, under A.R.S. § 13-2002(A)(3), the State needed only to demonstrate that McFarland's ticket had been falsely signed and McFarland had submitted the forged document with the intent to defraud T.C. Viewing the trial evidence in its entirety, a reasonable jury could find that the evidence was sufficient to show McFarland knew the supervisor's signature on his ticket was invalid and that he knowingly, with an intent to defraud, presented the ticket for payment. On this record, we cannot say the trial court erred when it denied McFarland's motion for judgment of acquittal.

## II. Denial of Motion to Continue

¶18 McFarland argues the trial court violated his constitutional right to counsel of choice by denying his request for a continuance to substitute private counsel for appointed counsel. The trial court denied McFarland's motion to continue without a hearing, leaving us little record on the matter. "It would have been better for our review if the court at the time it made its decision had given specific reasons in the record." *State v. Hein*, 138 Ariz. 360, 369 (1983). That said, we may affirm the trial court's

"ruling if it is legally correct for any reason." *State v. Espinoza*, 229 Ariz. 421, 424, ¶ 15 (App. 2012).

**¶19**　　　　Both the federal and Arizona constitution guarantee a defendant the right to counsel for his defense.  U.S. Const. amend VI; Ariz. Const. art. 2, § 24.  Implicit in these provisions "is the right to be represented by counsel of one's choice." *Hein*, 138 Ariz. at 368. But "the essential aim" of these constitutional protections "is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Accordingly, "the right to choice of counsel is not absolute, but [] subject to the requirements of sound judicial administration."  *Hein*, 138 Ariz. at 369.

**¶20**　　　　The trial court "has wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *State v. Aragon*, 221 Ariz. 88, 90, ¶ 5 (App. 2009) (internal quotation omitted). We will uphold the court's ruling on a request for a continuance absent a clear abuse of discretion. *Hein*, 138 Ariz. at 368.  This deferential standard recognizes that the trial court "is the only party in a position to judge the inconvenience of a continuance to the litigants, counsel, witnesses, and the court," and therefore "the only party in a position to determine whether there are extraordinary circumstances warranting a continuance and whether delay is indispensable to the interests of justice."  *Id.* (internal quotation omitted); *see also* Ariz. R. Crim. P. 8.5(b) ("A court may continue trial only on a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice, and only for so long as is necessary to serve the interests of justice.").

**¶21**　　　　"Whether an accused's constitutional rights are violated by the denial of a request for a continuance [to substitute private counsel of the defendant's choice] depends on the circumstances present in the particular case." *Hein*, 138 Ariz. at 369.  In reviewing a court's denial, we consider:  (1) whether other continuances were granted; (2) whether the defendant had other competent counsel prepared to try the case; (3) the convenience or inconvenience to the litigants, counsel, witnesses, and the court; (4) the length of the requested delay; (5) the complexity of the case; and (6) whether the requested delay was for legitimate reasons or was merely dilatory.  *Id.*

**¶22**　　　　Examining and weighing all the *Hein* factors in this case, the trial court did not abuse its discretion by denying the request for a continuance.  The record does not reflect that McFarland had previously requested any other continuances. However, McFarland failed to cite any

basis for believing appointed counsel was incompetent, and he did not contest that she was ready to proceed, though he claimed that his request itself reflected a lack of "faith in [appointed counsel's] abilities." *See Hein*, 138 Ariz. at 369 ("If the defendant has other competent counsel prepared for trial, then the court, when considering all the factors, need not tolerate as much inconvenience as in the case where defendant has no other counsel prepared to go to trial.") (internal quotation omitted). In addressing the inconvenience to other parties, McFarland conceded that his "eleventh-hour" request for a continuance was inconvenient, but argued the inconvenience was "minor" and outweighed by his right to counsel of choice. The length of the requested delay, at least several weeks in duration, was not insignificant. *See* Ariz. R. Crim. P. 8.5(b) (explaining that in evaluating the merits of a motion to continue, the court "must consider" both "the rights of the defendant and any victim to a speedy disposition of the case"). The case was not complex, and ultimately tried in a single day. *See Hein*, 138 Ariz. at 369 (explaining the "straightforward" nature of the case did not support a continuance). Finally, while the request may have been legitimate, it was, admittedly, submitted at the "eleventh-hour."

¶23 Although this was McFarland's first request for a continuance, and nothing in the record suggests that the request was a delay tactic, the other *Hein* factors weighed against granting a continuance. On these facts, the trial court acted within its discretion by denying McFarland's motion to continue, and did not infringe upon his constitutional rights.

**CONCLUSION**

¶24 For the foregoing reasons, we affirm.

