NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

HILDA SALAZAR, et al., *Plaintiffs/Appellants,*

*v.*

RICHARD W. WILSON, et al., *Defendants/Appellees.*

No. 1 CA-CV 24-0920

FILED 09-25-2025

Appeal from the Superior Court in Maricopa County
No.  CV2021-012445
The Honorable John L. Blanchard, Judge

**AFFIRMED**

COUNSEL

Degnan Horne, Phoenix
By Mark W. Horne, Justin Fouts
*Counsel for Plaintiffs/Appellants*

Mac Ban Law Offices, Tucson
By Barry A. Mac Ban, David F. Toone
*Counsel for Defendants/Appellees*

_____

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Andrew M. Jacobs joined.

_____

**C A T L E T T**, Judge:

¶1 In this medical malpractice action, Araceli Maldonado ("Maldonado") appeals a jury verdict for Dr. Richard Wilson ("Dr. Wilson") and asks us to order a new trial. She argues the superior court erred by declining to instruct the jury on a loss of chance theory. Maldonado also argues the court incorrectly instructed the jury on causation. Because the court did not abuse its discretion when it declined to give a loss of chance instruction and it correctly instructed the jury on causation, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 In August 2018, Hilda Salazar ("Salazar"), Maldonado's mother, saw a primary care physician, Dr. Baker, after noticing an abdominal lump. Dr. Baker performed an ultrasound and told Salazar that she probably had fibroids. Because Dr. Baker was not a gynecologist, he referred Salazar to Southwest Contemporary Women's Care for a consultation.

¶3 In December 2018, Salazar met with Dr. Wilson, a gynecologist. He performed a physical exam and told Salazar she had fibroids that would resolve on their own. Dr. Wilson prescribed birth control and ibuprofen to address Salazar's pain and cramping. He explained that the birth control would also "shrink the fibroid."

¶4 Salazar took the medication as prescribed, but her condition worsened. In May 2019, Salazar again saw Dr. Baker. He was surprised Salazar's gynecologist had not removed the fibroid, but he did not refer her back to Dr. Wilson or urge her to see another specialist.

¶5 The abdominal lump continued to grow, so in October 2019, Salazar went to Dr. Wilson and requested surgical intervention. She scheduled surgery, but it never occurred due to issues with insurance.

**¶6**          The lump grew larger still, so in January 2020, Salazar went to the emergency room; she was in great pain and had lost her appetite. Doctors evaluating Salazar immediately suspected the lump was cancerous and scheduled surgery. A few days later, doctors removed an eight-pound mass from Salazar's abdomen. Tests confirmed Salazar had an aggressive form of cancer, and she began treatment. Salazar sued Dr. Wilson, alleging medical malpractice for failing to diagnose the cancer, but she passed away in 2023 before trial. Maldonado substituted as plaintiff on behalf of Salazar's beneficiaries.

**¶7**          Before trial, Maldonado requested the following loss of chance jury instruction: "If you find that [Dr. Wilson's] failure to exercise reasonable care increased the risk of the harm he undertook to prevent, you may find from this fact a 'probability' that [Dr. Wilson's] negligence was the cause of the damage." Dr. Wilson objected, arguing that under *Thompson v. Sun City Cmty. Hosp., Inc.*, 141 Ariz. 597 (1984), a jury should not be instructed on loss of chance. At the close of trial, Maldonado again requested a loss of chance instruction.

**¶8**          The court denied Maldonado's requests for the instruction but permitted her to argue "in closings about what you think the jury should do with the evidence . . . including any loss of chance." The court instructed the jury that "[o]n any claim, the party who has the burden of proof must persuade you, by the evidence, that the claim is more probably true than not true." It also instructed the jury on causation as follows: "Negligence causes an injury if it helps produce the injury, and if the injury would not have happened without the negligence." The jury returned a full defense verdict for Dr. Wilson, and the court entered judgment in his favor.

**¶9**          Maldonado timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶10**          Maldonado argues the court (1) erred by refusing to give a loss of chance instruction and (2) misstated the law in its causation instruction. We review a court's refusal to give a requested jury instruction for an abuse of discretion. *State v. Dann*, 220 Ariz. 351, 363–64 ¶ 51 (2009). But we review de novo whether an instruction correctly states the law. *Cavallo v. Phoenix Health Plans, Inc.*, 254 Ariz. 99, 104 ¶ 15 (2022).

## I.      Loss of Chance

**¶11**          "A party is entitled to an instruction on any theory of the case if reasonably supported by the evidence." *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cnty.*, 222 Ariz. 515, 533 ¶ 50 (App. 2009). A court must give an instruction if (1) the evidence supports the instruction, (2) the instruction is appropriate under the law, and (3) the instruction pertains to an important issue and is not adequately covered by another instruction. *Paz v. City of Tucson*, 256 Ariz. 391, 395 ¶ 7 (App. 2023).

**¶12**          Maldonado requested that the court instruct the jury that it could find causation if "[Dr. Wilson's] failure to exercise reasonable care increased the risk of the harm he undertook to prevent[.]" But our supreme court has already decided that loss of chance "is not a subject of instruction; it is for the court." *Thompson*, 141 Ariz. at 608; *see id.* at 607 n.10. Under *Thompson*, the superior court was not required to give the instruction, and it did not abuse its discretion by refusing to do so.

**¶13**          Maldonado acknowledges that *Thompson* rejected any entitlement to a loss-of-chance instruction. But she urges that the portions of that opinion doing so were non-binding dicta. If not, she urges us to overrule *Thompson*. Maldonado misreads *Thompson,* and we are powerless to overrule our supreme court.

**¶14**          Our supreme court's discussion about a loss-of-chance instruction was not dicta. One primary issue in *Thompson* was whether the superior court erred by refusing a loss-of-chance instruction. *See id.* at 605–06 (discussing a plaintiff's request for an instruction that causation could be proven by showing that the defendant increased the risk of harm to the plaintiff). The court held that a loss of chance can satisfy causation and adopted Restatement (Second) of Torts § 323. *Id.* at 608. The court then narrowed how § 323 applies by further holding that loss of chance "is not a subject of instruction." *Id.* That statement directly addressed whether the superior court in *Thompson* erred in refusing to give an instruction, so it was not dictum. *Id.*; *cf. Swenson v. County of Pinal*, 243 Ariz. 122, 126 ¶ 10 (App. 2017) ("A court's statement on a question not necessarily involved in the case before it is dictum." (citation omitted)).

**¶15**          We also cannot overrule *Thompson*. We are bound by the Arizona Supreme Court's opinions and have "no authority to overrule, modify, or disregard them." *Prosise v. Kottke*, 249 Ariz. 75, 79 ¶ 20 (App. 2020) (quoting *State v. Thompson*, 194 Ariz. 295, 298 ¶ 20 (1999)). If

Maldonado wants *Thompson* overruled, she must ask the supreme court to do so—and we express no view on whether it should.

## II.  Causation

**¶16**         Maldonado next argues the superior court incorrectly instructed the jury on causation.  Causation is a legal requirement for any medical malpractice claim and generally is a question of fact for the jury. *Windhurst v. Ariz. Dep't of Corr.*, 256 Ariz. 186, 194 ¶ 25 (2023).  The superior court instructed the jury on causation as follows: "Negligence causes an injury if it helps produce the injury, and if the injury would not have happened without the negligence."  Maldonado argues the court erred in saying causation requires that "the injury would not have happened without the negligence."

**¶17**         The court did not err.  Its causation instruction mirrors how our supreme court has defined causation for nearly a century.  *See id.* at 194 ¶ 25 (defining causation as "a natural and continuous sequence of events stemming from the defendant's act or omission, unbroken by any efficient intervening cause, that produce[d] an injury, in whole or in part, *and without which the injury would not have occurred*. (emphasis added)"); *Sampson v. Surgery Ctr. of Peoria, LLC*, 251 Ariz. 308, 311 ¶ 15 (2021) (same); *Chapman v. Salazar*, 40 Ariz. 215, 219 (1932) ("Proximate cause was defined by the court as follows: 'Now, the proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any new cause, produces an injury, and without which the injury would not have occurred.'  Appellants object to this definition but do not point out wherein it is wrong.  It is a definition frequently given and entirely correct.").

**¶18**         The court also instructed the jury that it could find for Maldonado if she persuaded them that her "claim is more probably true than not true."  Thus, the court's instructions were consistent with the court's comment in *Thompson* that the "jury is still instructed that they must find for the defendant unless they find a *probability* that defendant's negligence was a cause of plaintiff's injury."  141 Ariz. at 608; *see id.* at 607 n.10 ("There was no need for the judge to do more than instruct on the general principles of probability and causation.").  We discern no error in the court's jury instructions.

## CONCLUSION

¶19 We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR